Case number 17-2171 and 18-1233, Usama Hamama et al. versus Rebecca Adducci et al. Argument not to exceed 25 minutes to be shared by attorneys for petitioners and 25 minutes for respondents. Mr. Stewart, you may proceed for the appellants. May it please the court. I'm Scott Stewart on behalf of the federal government. I'd like Judge Batchelder, if I may, to save five minutes for rebuttal. Thank you. At issue today are two preliminary injunctions barring removal of a large group of Iraqi nationals and ordering bond hearings and potential release for a large number of Iraqi nationals. As we explained in our briefs, each of those injunctions rests on serious errors of law. This court should fake each injunction and remand for limited further proceedings. If I may, Your Honors, I'd like to start with the removal injunction. The district court held that 8 U.S.C. 1252 squarely bars jurisdiction in the district court here as a statutory matter. But it held that applying Section 1252's plain terms would violate the suspension clause. The district court was correct as a statutory matter, as we've explained in our briefs, but wrong as a constitutional matter. If I may, I'd like to go straight to the constitutional matter, but would, of course, invite questions on the statutory question. As an initial point, Your Honor, the suspension clause does not come into play in this case because we don't have a core application of habeas. We have here a situation, much like the Supreme Court faced in Munaf, where a group of folks sought habeas jurisdiction to bar their removal or bar their release to someplace as a way of insulating them from alleged torture, alleged prosecution, things like that. Very similarly here, we have habeas being invoked not as a challenge to the legality of executive detention, which is the square, traditional, common law use of habeas, but instead as a means of barring release from another country. I think it's important in that regard to note that, again, the United States could affect these removal orders to a number of countries, not just Iraq. So the result here is not automatically release in the United States. So again, it's not sort of a central core use of habeas. We point out other reasons, of course, why. So we have to focus on kind of common law core, as you say, of habeas as opposed to statutory habeas. Is there any common law analog of a situation where a government was trying to send someone to another country and you were able to get release somehow? I'm not certain that there is, Your Honor. I mean, I guess all I'm trying to say is I think you're right about your first point, but that then leads to the question, well, maybe there is some historical example where habeas was used in this setting. You know, Your Honor, I don't know that one has been pointed to in this case. I'm not aware of any. We've been, you know, the issue has been vigorously contested, and I haven't sort of seen a good example of that. I will say that whatever the case may be there, the law here does apply a means. If you're charged with a crime in 1710 in England, if you're convicted and you're about to be sent to Australia to the penal colony for the sake of argument, there was no way to get out of that? I mean, I would have thought you could have brought a habeas action. And what you'd be saying is don't send me to Australia. You know, I'm not sure if the only alternative there would be released back into the initial country or to Australia. There may be something there because there is a possibility of removal, Your Honor. I think what, again, what we have here, though, is that there's a situation where somebody could, under the law, be removed to a number of countries. Iraq is, of course, the presumptive place, given that we're talking of Iraqi nationals and people from Iraq, you know, broadly here. But again, I haven't sort of seen a common law analog that would fit within this. And I think that's borne out a little bit by, or pretty well by just the nature of the challenge here, that it's sort of a fact-intensive challenge undertaken without exhaustion, even though exhaustion and sort of pure legal determinations are really at the heart of what the common law habeas writ is about. As a statutory matter, things have broadened, but that's not sort of definitive of the suspension clause's scope. So I would sort of hit those points and emphasize, as Your Honor says, that this is not really seeking what is the traditional form of habeas relief. And I haven't seen a good example kind of where this would fit in in the common law. Even if there is a common law analog, I mean, Felker versus Turpin would say, you can still channel the relief. I mean, it's not a suspension clause violation if you create an alternative system with new standards for how you try to vindicate your rights. Sure. Exactly so, Your Honor. And we say that even if the court, however the court resolves the sort of does this suspension clause apply or not here, the alternative kind of independent ground to sort of reject the district court's conclusion is because of the adequate alternative mechanism that exists here. Through the Administrative Immigration Courts, the Board of Immigration Appeals, and ultimately through the Federal Courts of Appeals, which has authority to review and rule upon legal and constitutional issues. You know, and that is a critical point that I want to emphasize. And I think it's missed somewhat in the district court opinion sort of the importance of the statutory and regulatory regime we have surrounding removal here. The district court, I think, sort of took this as a presumption that a situation where once somebody is ordered removed, if they're not removed, then there's kind of a reliance interest or they come to believe that they can stay in the country or there's kind of a de facto building up of constitutional type pedigree procedural rights. And I want to emphasize that the district court just got that wrong as a matter of law. And if I may, I just want to briefly describe some key sort of features of sort of the removal process. Because the key kind of process here and what's afforded didn't start in 2017. It started way back when people started going through the removal system. The removal process here, in short, it's a very robust, thorough set of protections aimed at getting at whether somebody is removable, whether they're entitled to any relief, that sort of thing. An alien gets notice of what the charges are against them. They get to submit evidence. They get to cross-examine witnesses. In the course of removal proceedings, an immigration judge has to make a decision based on the evidence. And there has to be enough evidence to make that decision. The alien has a right to apply for and seek all sorts of discretionary forms of relief, asylum, non-discretionary forms of relief, well withholding of removal under statutory grounds and under the Convention Against Torture. What percentage of immigrants win these cases, given how robust it is? As far as ultimate relief or removal, Your Honor, I'm not sure the answer to that. A low percentage, isn't it? I believe that's right, Your Honor. Again, I apologize for not having kind of firm numbers. But I mean, that's true of sort of a lot of areas in the law when the government is bringing an affirmative case and the government ends up showing its case and that sort of is available. But again, the procedures are quite robust. And in addition to the ones I've described, as far as the evidence. You mentioned the word robust, and that's why I said it. Sure. You can call something robust if no one gets relief. I just think it's a bit of a misnomer. I mean, according to, I mean. In fact, you might say they have lots of procedures and ultimately, they're designed to prevent relief. Well, you're. If you have any hurdles to clear, you'll never get it. Your Honor, I think in this case, I mean, both the district court and my friends on the other side have maintained that if somebody can access the system, then it's a fine system. It can adjudicate things. It's not sort of unfair or improper. It grants relief. And they've touted that they are reopening their cases. They are being granted relief in a number of these cases. So people do get relief. Some of the burdens are high. But there are favorable exercises of discretion. There are many people who meet these burdens and that sort of thing. And this case is sort of bearing that out. Relief doesn't mean getting the outcome you want. Exactly so, Your Honor. I mean, again, it's not a guarantee of outcome, but a guarantee of just sort of an adequate and effective mechanism to correct errors, raise relevant claims that are provided under the law. But exactly so, Your Honor. And just to sort of fill out the picture a little bit procedurally on the robustness, Your Honor, there are appeals to the Board of Immigration Appeals, petitions for review of the courts of appeals. People can move to reopen or reconsider. And critically here, there's no time bar or numerical bar on seeking reopening in light of changed country conditions. And the last point I just want to say on the procedures, and again, this is critical to sort of where the presumptions lie, is that the statutory and regulatory regime here really puts the emphasis on if you're ordered removed, you are expected ultimately to be removed. The hope under the law is that things will move expeditiously because there are ample processes and other opportunities and just difficulties of manpower and other things. That doesn't always happen. But the strong expectation is that folks will ultimately be removed if they don't get some relief. Hypothetically, if you had a situation where somebody is about to be removed to a country where it's fairly certain that they're going to land, be taken into custody, and that's going to be the last anybody sees of them, hypothetically, and there had been a status quo, which is changing, and then there's been a change of country conditions, there's no, if the government wants to move expeditiously before there is a motion to reopen for change of country conditions, there's absolutely nothing that courts can do to postpone that. No, Your Honor. So in the hypothetical, which, as I think you've rightly recognized, is not the situation we have here, if there would need to be some kind of Article III intervention to prevent something in an extreme case, the appropriate route would be to seek emergency relief in a federal court of appeals. That's the only route that's consistent with the channeling statutory review scheme here. It does happen. People do, on occasion, shoot up from the administrative level to the courts of appeals before there is a ruling. Again, it doesn't need to happen and doesn't happen very often. There may be other issues with that sort of thing, but to the extent there needs to be an Article III intervention, that would be the one that's consistent with the statutory scheme, Your Honor. And we cite the Kahn case out of the Third Circuit as one example. This court's decision in Trujillo-Diaz is slightly different because, as I recall, the BIA did rule on a stay very swiftly. But it was about two days past between filing and ultimate ruling on a stay from this court. So things do move very swiftly, and there is a mechanism for that. Here, the key problem is, because of the injunction on removal issues, that didn't really get to play out and that didn't get to be displayed. We did have a multi-declaration that showed how well things were moving on motions to reopen in the Detroit area. But again, because the injunction intervened, it wasn't allowed to play out the way it was meant to. I think, Judge White, if I can also just add a point, and this was sort of to close the loop on the presumptions and reliance interests and so forth. When somebody is ordered removed and they've exhausted all their remedies, they can depart. They can leave the country. There are actually criminal provisions in place allowing for criminal and civil penalties for failing to depart, which at the very least show there is a strong presumption that people are supposed to depart. And even those folks who don't depart and are released from detention on orders of supervision and the like, those folks are heavily regulated in what they do. They can be subject to check-in procedures, exams, requirements to obtain travel documents or to help obtain travel documents. So this system is all geared at the idea of when the government seeks to remove you, it gives you a lot of process. But if you are, after all that process, ordered removed, you're expected ultimately to leave or to be removed from the country. Can I ask a question? Let's say you're right about the jurisdictional point on the removal case. If that's correct, does it follow that we don't have jurisdiction over the detention case? We don't take the position there, Your Honor. I think the Supreme Court recently rules on these detention issues. Detention is a sort of different challenge to the fact or length of confinement is the core kind of 2241 habeas issue. To the extent we were saying dismiss the whole thing in our opening briefing, that was before the case kind of moved on to encompass length of detention issues. So I guess I'm curious why. Why wouldn't there be the same jurisdictional objection to the second part of the case? I mean, the idea, I thought, was there's a channeling mechanism that Congress has created. Here's how you handle this. And there's still, if you have a detention objection, there are still ways to channel those objections through the existing administrative process, including up to our court. So I guess I'm trying to figure out why. You know, it's sort of. Rules don't apply. Now, I realize Jennings went through the district court. But the US Supreme Court didn't say anything one way or another. And of course, they reversed. So I just don't know. I would put the question just slightly differently. Yes, Your Honor. If 1252G says, lays out where there isn't jurisdiction, and says over any claim arising out of the government's execution of removal orders, why isn't a detention order that is in connection with a removal order any claim arising out of such a procedure? Right. I think the challenge here, Your Honor, is that we're litigating the, or we're seeing the second appeal, or the challenge of the second injunction, kind of in light of the existence of the first injunction. So we're not able to execute or effectuate removal orders. So we kind of have the situation of people who are detained and can't be really removed for some period of time. So I think that's the issue. I do acknowledge that if the court vacates on the first injunction and sends back, vacates on the second injunction and sends it back down, there may be further jurisdictional questions or just other things to consider. I haven't fully fleshed out exactly how. I mean, the way Judge Batchelder asked the question was to narrow it a little bit. Because what I heard her be saying is there wouldn't be detentions but for the district court's exercise of authority that you think he doesn't have. And so it is funny to say, OK, fine. We'll say there's no jurisdiction over that, but we're still going to say there's jurisdiction over detentions that were created by a district court authority or exercising authority that, in your view, he didn't have. So it's funny to say you don't just dismiss the whole thing. Right. Yeah, that's a fair point, Your Honor. I guess what I'm saying is sort of trying to answer the question in light of the first injunction. But I agree that there's an issue there about how any continuing detention aid of removal could be challenged other than through the, I think it would have to go through. If the government's position in just a run of the mill detention case that has nothing to do with the first case, just a run of the mill detention, you can go to federal district court. Can you see cabious relief? Is that your view? No, Your Honor. In this case, detention is in aid of execution. So it would have to go through the normal kind of 1252 channeling process. Well, then maybe I'm not understanding how you were answering my initial question, which was a broader question than Judge Batchelder's. Right. And I for sure didn't understand that answer. So tell me what the answer is. Hypothetically, you win on the first point. It's exclusive in removal cases. It's channeled. That's all there is. You can't go straight to district court. So hypothetically, you're vindicated on that point. What does the world look like in the future when someone complains that, hey, I've been detained for six months without a hearing or I want a bail option? Is it your view they can go to district court? No, Your Honor. They should pursue in those cases, at least in the ordinary course, whatever remedies they have in the- Because it's exclusive? It's at least the initial forum, I believe, Your Honor. Well, no, but you know what I mean by exclusive. Exclusive in the sense that you exhaust your administrative options, and if you don't like that, you go to the Article III court, which is a court of appeals, not a district court. That's the question. Is there any role for district court judges on detention matters if you're right about the removal argument you've made? I'm not certain, Your Honor. You know, 320 million people sitting behind you not wanting concessions, but you might think about it, and it'd be really helpful if you told us the government's position. I think that's fair for us to ask. That's fair, Your Honor. It's very strange to have a jurisdictional case and we, what, we're going to not? And there's no jurisdictional issue in the second case? Because if there isn't, I want to know why, and I want to know why that's not inconsistent with your position on the first case. I mean, I'm not complaining. Right. I'm just saying that's, I for one would really like to know that. I mean, I think that the reason it's so stark in the first case, Your Honor, is that there's. No, no, there's no such thing as we have jurisdictional rulings because they're easy, and then we ignore jurisdictional issues because they're hard. I don't want to go down that road. Fair, Your Honor. I think what I was going to say is that staying removal is a pretty square, it runs pretty squarely up against 1252G's text of no district court intervention on the execution of removal orders. There could be a case where detention is so disconnected from a removal order that there may be lingering district court jurisdiction, but I. It refers to commence proceedings, adjudicate cases. Pretty broad. It is, Your Honor. Well, anyway, I'll let Judge Batchelder say when, but I sure would like to find out what the position is, because I want to know if that position is in tension with your first argument. And I'll bet the other side wants to know that, too. Thank you, Your Honor. If I may, Your Honor, just quickly on the second appeal, I'm happy to sort of rest as much as possible on the briefs on this before sitting down and saving a little bit of time for rebuttal, but I would just emphasize that I think, to the extent there is a kind of jurisdiction on the matter, Jennings, I think, largely resolves most of the issues on the second appeal. The way that this court reached its rulings on both 1231 and 1226 was largely through a constitutional avoidance approach to statutory interpretation that has been rejected. And otherwise, we hit those in our briefs. If I may, Your Honor, I'd like to save the remainder for rebuttal. I've got a question. So just as a practical matter, I'm trying to figure out how this works. If you have somebody who is out on an order of supervision, and they file a motion to reopen, and they have a disqualifying conviction or something like that, or something that permits removal, do you immediately arrest them while the opening of removal proceeding is pending? It would depend on the case, Your Honor. And it would just depend on, say, if somebody's already been ordered removed, and there's a plan to remove them, they could be arrested. I can't give a sort of firm answer, because it is subject to different considerations. But if removal is reasonably imminent, there is a chance that they could be then detained promptly and would have to litigate while detained. Well, I'm asking something different. I mean, there's somebody who's been, hypothetically, they're subject to a supervision order because there's no real possibility of removing them. But they file a motion to reopen, sort of somebody who you say these people, the procedure that you think the petitioners should have followed, where they sense that there's some changes in the country conditions, and that if they were to be removed, it would not be a very good thing. And they file their motion to reopen. The motion to reopen is granted. Do you then say to yourselves, OK, now we're under 1226C, we have to go out and arrest them and put them in custody? No, Your Honor. I don't think they, just the mere filing of it would not put them under 1226C. If they had finally. It's granted. Their motion to reopen has been granted. The administrative agency is going to consider whether there's been a change in country conditions. That is the change of situation. That motion to reopen has been granted. I'm not sure as sort of an operational matter how those play out. I mean, detention could ensue in that case. But I don't think I can give sort of an across the board answer on that, Your Honor. So it's not mandatory in the sense that you're not saying that once it's been reopened, you are now moved into 1226. And if you have any of these things in your record, you immediately have to be detained. If it's under section 1226C, there is mandatory detention, Your Honor. What I'm saying is that as a practical on the ground matter somebody may not always be detained in that case for a number of just sort of reasons, kind of on the ground reasons, I think. They may still be regarded somehow as under that supervision order, as long as they're complying. I believe that that may be how it plays. But I'm not sure that the record discloses one way or another. I'm sorry. Don't want to kind of get the point wrong there. OK. Thank you, Your Honor. If I may say for a moment. Good morning, Your Honors. May it please the court, legal learn from the ACLU for petitioners. I will be splitting my time with my colleague. I will be addressing and focusing on jurisdiction in the first appeal. My colleague will be addressing the remainder of the first appeal and the second appeal. Let me just start with the questions that Judge Sutton and Judge Bachelder were asking the government. I assume the government's going to correct themselves when they get up on reply. The government's position is that there is jurisdiction in the district courts over a detention claim. They did not contest jurisdiction in Jennings. The Supreme Court in Jennings did address on its own jurisdiction over detention claims and said there was jurisdiction in Habeas. And one of the reasons is because you couldn't get the claim to the Court of Appeals because it would necessarily be moot by the time you got to the Court of Appeals. Because the claim is, should I be in detention during the administrative proceedings? That doesn't follow. I mean, you can get stays in the administrative proceedings. But that's more if you can get a stay in the Court of Appeals. But that's as to removal. But if you can't get out of detention, what court has to review the detention, the Supreme Court said, is the district court. That's how it goes. You can't go from the BIA to the Court of Appeals on a detention claim. My colleague will address that more fully, because she's going to be doing the detention claims. The reason I wanted to bring it up, Judge Sutton, is because you, I think, rightly connected the two appeals and jurisdiction. And I think it goes to Judge White's question, which is, what happens if you are going to remove someone so quickly that they can't get into the process? And so I just want to lay out what happened in this case, to be fair to Judge Goldsmith down below. We walked into court. Well, I mean, you can do this however you want. But I mean, maybe when you're saying what you want to say, you can think about this question I have. I'm focused on removal now, as you are. So let's just keep, for now, keep the focus there. It's just not obvious to me what procedures you get through your district court approach, which obviously you prefer and think you have a right to. That's just not obvious to me how they're better. That just kind of escapes me, frankly. Better than the Court of Appeals? No, better than the administrative system, which allows you to go to the Court of Appeals faster than you would go through district court. I mean, you've got all these opportunities for stays through the administrative process. We get these stays. I mean, in 15 years, I've had tons of these motions. So I'm just not obvious why your claim gets favoritism relative to what I feel like I've been doing for 15 years with lots of other people with, frankly, much worse stories. They have to go through that system. Yeah, no, I mean, let me get back to whether they are, in fact, worse stories, because we do think, I want to get to the, because I think your question goes to the crux of this case in jurisdiction. I do want to say in terms of worse, I think what Judge Goldsmith was faced with an undisputed record was that he would literally be signing the death warrant of people if he didn't keep them in the country. We're talking about not just ordinary persecution on religious grounds. We're talking about beheadings, sexual slavery. The State Department has said it's virtually genocide. And so I think he was looking at potentially signing the death warrant. Now, going to your question, which I agree is the crux of this, there's no question people have to have review, notwithstanding the government's suspenseful argument. I can turn to that later. That's just re-arguing St. Cyr. But on the question of why we didn't go to the Court of That was the preferred means of going. And we said to him, very frankly, that would be the way to go, but we can't get there in time. We walked into court on June 15th. The government said these people may be sent back to Iraq on June 17th. There were hundreds of them scattered all over the country. No one could find them. To go into the administrative process would have required finding them lawyers and preparing an entire motion to reopen, because you cannot just file a stay before the immigration judge or the immigration appeal by itself. You have to have the entire motion to reopen prepared. So all Judge Goldsmith did was say, look, you need to have access to that system, exactly as you're saying, Judge Sutton, because you do deal with it. He said, I need to give them time to get into the system. Once they're in the system, then the system can work. But that's what he did. And I think the government is not being All of that, to be accurate, what has to go with it is not just that, access to district courts from time to time, but access to class actions from time to time, because everything you've said doesn't work unless you have a class action. Isn't that right? Well, I don't know, Your Honor. I mean, it probably works better with a class action. The government has not this. Judge Goldsmith did not certify a class as to the first appeal in this case, and the government has not contested the use of a class action. We can certainly do that on remand, and we can certainly name individuals now. But you're right. You do need to proceed in a What's the authority for class actions in habeas? Well, I think that That's a scratcher for me. I mean, I just didn't think that's the way it worked. Well, I think the Supreme Court has never said it doesn't. I think How about Reno? Reno v. Flores? I don't I thought it was the Scalia-Reno versus some AADC versus No, I don't think that Justice Scalia said there's no class action habeas, but we can certainly brief that for you, Your Honor. The government has not contested it here, so we haven't briefed it here. And also, Judge Goldsmith in footnote 13 said, I'm not going to certify a class in this case, and so the government hasn't put it at issue. But I do want to say whether it's a class or whether it's lots of people joined in a habeas. Justice, I want to know their answer to the jurisdictional question in the second case. I want to know your answer to the class question, because they work together, because I think the whole premise of what Judge Goldsmith did and what you urged him to do was you needed to do this on a class-wide basis. And if that's something that doesn't work in habeas in this setting, it's a very useful piece of information, because it destroys the premises of everything he did. Yes, Your Honor. Well, I don't know that it destroys the premise. So if I want their answer, I'd like your answer. Okay, we will give you that answer, and whether we can probably give it, my colleague can give it to you and answer. I apologize for not having that answer. The government didn't put it at issue, but I agree that you need to know that if it's concerning you, and my colleague will give that to you. But even if it's not as class-wide, even if it's, let's just say, a few people, and we have the names, we still could not have gotten motions to reopen filed in those two days. It still would've... Why are we talking about only two days? Because we walked into court... No, no, no. Oh, I... It's not like this suddenly was dropped out of the blue on all of these people. They've known for a very long time that they were at risk. Your Honor, let me address that, because I think it's an important point. And I think what you're suggesting is that because they have very old final orders of removal, they could have moved to reopen earlier than when the government picked them up. We don't think that that would've been reasonable, and I think the district court made findings about that, because this is very different than the normal situation where someone has a removal order and knows that the government just hasn't got around to executing it. This is a situation where people have been living here for decades. There's been no repatriation agreement, so people couldn't be removed. So for them to file motions to reopen would've seemed, just as the district court put it, unreasonable, and one of the reasons is not just factual, but it's legal, because ultimately, CAT prevents your removal based on the conditions at the exact time you're being removed. So let's say they filed motions to reopen in 2007, 2018. If they had been denied, they still would've been allowed to move to reopen again based on the conditions, because they were constantly changing it. Even if they had been granted, the government could've taken it away and said conditions are better. So it makes little sense for people to move to reopen based on changed country conditions if there's no expectation. And this was not just them feeling like, ah, maybe the government will never get around to me. It was 20 years of Iraq not taking people back unless they had an unexpired passport. So this is a very different situation. I think the government is trying to present this as, this is the normal person sitting around with a final removal order and hoping they escape or get lazy. These were people that were out in the open reporting all the time. Iraq would not take them back. And then the government sweeps in, and Judge Goldsmith rightly says, well, they've been here 20 years. They had no expectation they could be removed. Now you're gonna remove them. When did the change come where the Iraqi government says, we are no longer going to take the position that we did. And now if you can arrange to get people back here, we will allow them if they have to. Right, that was the change that happened around the first travel ban. That was part of the negotiations where Iraq ultimately got taken off the second travel ban. And so that's, we're talking late spring. And then the word, but it was not really out in public that that had happened. And it wasn't really that people got noticed until they were starting to be arrested on June 11th. We were in court by June 15th, and Judge Goldsmith said to the government, look, what do you want me to do? I am faced with enormous evidence that people are gonna be beheaded. There's gonna be genocide. You're saying you're gonna remove them in two days. Won't you give them time to file motions to reopen based on these conditions? These are minority Muslim sect, they're Christians. They're obviously gonna be in serious danger. Give them some time to file motions to reopen. You have not put in any evidence that it is not dangerous in Iraq, that these people are not gonna be threatened with potentially genocide. The government said, no, we won't do that. We're gonna remove them. And so Judge Goldsmith said, well, I have to slow down the process. I still am not getting this. I think you were trying to say the problem with the reopening approach is you have to, I think you were saying you have to get the whole application together before you seek a stay in connection with it. That's your point? Yes. So explain why that is harder than a district court preliminary injunction. I mean, the district court, I mean, even if you're right about jurisdiction, you can't lightly stop the immigration process. I think we all agree, including Judge Goldsmith, this is the exception to the rule. So you have to have something extraordinary. Why, I guess I just, it's not obvious to me why the same set of materials you need to show entitlement to district court preliminary injunction relief isn't just as difficult in getting together the package to reopen, get a stay, I'm about to be beheaded, stop it, and if it doesn't work, come to us and we'll stop it. Your Honor, so I see my time is running out, but the answer to your questions, I think are all in the record and Judge Goldsmith made factual findings. I think first is the immigration judge and BIA require you to very carefully particularize it to your client, everything about your particular client. I sure would hope the district court judge would do the same thing. Well, I think that- If we're gonna allow this as a district court safety valve, I expect them to actually be looking even more rigorously than the immigration judge. Well, I think, you know, in fairness to the, and plus there's also in the record that the state process doesn't work that quickly for the immigration judge, BIA, notwithstanding the generalized responses by the government, there were factual findings that the state process does not work that quickly, but I think in fairness to judge- Can you come to us the minute- No, let me be very clear about that point and I hope that the government on reply will be clear about it. You cannot, under the government's position, come to you before there is a final decision by the BIA on the motion to reopen. You cannot bring a stay into locatory. So hypothetically, the board, either at the IJ level, the board level is sitting on one of these and, you know, the plane's about to leave in three days. You're telling me hypothetically in that situation, the lawyer asked the board, are we gonna get a ruling on either the reopening or our stay before, you know, July 22nd? And they say, no, you're not. It's not gonna come out for a month. You're telling me in that setting, you could not come to our court and get- Your Honor, that's the government's position and the government cited only one case to you, Khan, in the third circuit. If you look at Khan very clearly, A, the government contested jurisdiction to do that, that kind of prospective jurisdiction by you to issue a stay, and the third circuit ultimately didn't issue the stay until the motion to reopen had been denied. In that case, didn't they act on it in time? The third circuit? The BIA did, but that's just happenstance. I mean, we know plenty of- That proves it can happen. I mean, that proves- Oh, it's certain- What's the case that says no? What's the case where the court of appeals says, ah, we don't care? No, the court of appeals and the third circuit didn't act on it until the motion to reopen was denied. So they waited until the motion to reopen was fully denied, and luckily- Was it mooted by then? Well, the jurisdictional issue of whether they can issue a stay prospectively was mooted, yes, so it's not, doesn't stand for the government's proposition, and we can submit to you supplementarily- But I mean- Tons of brief- Tell me a case. Is there a case where the nightmare scenario occurs and the court of appeals says, no, we're not looking at this until we get an administrative decision on the motion to reopen. We realize the administrative agency's not gonna act on it until months after the person departs, but we don't have authority to grant a stay in the interim. Is there a court of appeals case or a U.S. Supreme Court case that says we can't do that? Your Honor, there are court of appeals decisions. We will submit to you them in supplemental briefing along with the government's briefs and all those cases saying there's no jurisdiction. I just want you to tell me a court has said that. Yes, courts have said it, and we will give you those citations, and if that would be a sea change in what's going on, if you could get to the court of appeals and say the nightmare scenario's going on, Judge Goldsmith could have turned around then and said, look, the court of appeals is there for these nightmare scenarios, but the government didn't say you can go straight to the court of appeals, and so he is faced with the nightmare scenario of signing people's death warrants. And, you know, I mean, if the government wants to get up here and reply and say our position, notwithstanding the hundreds of briefs that we said you can't go straight to the court of appeals on a stay. Your Honor, that's not what I said. No, I know you want the court cases, and we will give you them. No, I did not say is there a right to go straight to the court of appeals. I said what happens when you seek stay relief in front of the administrative agencies? They won't act on it or they deny it, and they won't act on it in time for it to be relevant. No, I understand. Can you then go to the court of appeals? That's my question. My fault, Your Honor. I understand. I know that that's the scenario where you first ask the administrative agents for a stay. They don't act on it quickly or they deny it, but they don't deny the motion. That's the exact scenario I'm talking about where the courts have said it. Thank you, Your Honor. Thank you. Thank you. May it please the court? I'm Margo Schlanger, also here for the petitioners. Let me start with the point that the existing on the first appeal, that the existing available remedies are not adequate and effective. I'll do that just quickly and then move to the second appeal unless there are other questions. The government freely admits that what it was trying to do was to deport the petitioners before they had a chance to file and get a resolution on their MTRs. And we know that that hurry was in fact depriving people of their right to be heard because the first few dozen that got filed in the exigent circumstances that existed all got denied out of hand because nobody could put together an adequate MTR package in those couple of days. And then the MTRs since have largely been granted. And that demonstrates that the hurry was in fact prejudicial. The reason is that MTRs when you file them, you have to file a stay, you have to file an MTR to get a stay and to file an MTR, you have to file the application for underlying relief. So you need very particularized evidence for each person and you need their signature, you need to know what happened to their immigration case prior. I just don't get this argument. Why wouldn't the same rule be true if you were going to a district court judge on an individual basis to get that judge to go outside this system? Right. Wouldn't you require just as much? I would think you'd require more because it's so extraordinary. Well, what the district court judge ruled on was on the basis of overwhelming evidence of changed country conditions and of danger, but not of the particularized evidence about underlying relief. So there was no evidence in front of the district judge of the particular convictions of given petitioners, that kind of thing. And that's the stuff that takes so long to put together. So when we got what the district judge found. District court judges be excused from having to look at that before they go outside of this path that we all agree is the norm. It's quite extraordinary to go outside of it. It makes me even more skeptical of the argument that you get rid of that burden. You're not only avoiding the normal path, you're not even being asked to do the things you normally have to do to get the relief. But the only thing that the district court granted was a pause, giving people time to go into immigration court and seek that underlying relief. The district court wasn't adjudicating the underlying relief. And so the district court got evidence of country conditions and of danger and of the unavailability of the regular system. And that's the trifecta in this case. And those are unique. These were longstanding orders of removal entered. Some of them, the median one was entered 10 years before. They're very old. And these are folks who have been out with an official statement from the government saying you are not repatriatable. And that's why they're out on orders of supervision. And so they- Hypothetically, you could go to the district court judge if you're right, and you've got two things you can say. Point to all the stuff that's just really serious change country conditions and very seriously show you're the kind of person that they're gonna go after. Okay, so those are the two things you show. It turns out your right to relief under immigration law is non-existent. You could still get a district court judge to stop everything- No, Your Honor. Without explaining why under the immigration laws, that still doesn't make sense to me. That exact same showing, and plus, I just wanna emphasize, and the inaccessibility of the system to you in the particular factual circumstances. But that showing, change country conditions plus danger to you, that's the showing for withholding and cat relief. And so what you're showing is that there's a very plausible case for withholding or cat relief. Other things. I mean, if you've just committed 17 crimes and everyone knows you're guilty and there's no chance of that not being true. Right, Your Honor. A little bit of a so what. That would exempt you from withholding, but it would not exempt you from cat relief. The duty of the United States not to return somebody into torture does not turn- Then my answer, then my question's what about withholding? Why do you get to get around that by going to district court? That doesn't make sense. I think that cat is key to our case, Your Honor. So it's a cat case and not a withholding case. Well, it's a due process case and a cat case, Your Honor. It's a due process claim on the right to be heard on the MTR. And it's a cat case that cat itself gives you this underlying substantive right not to be deported into torture. And you get a chance to be heard on that too. The district court on the cat claim focused on the fact that there's no automatic stay at which the reg does say no automatic stay when you make a cat claim. But the reg predates cat. So it's not an interpretation of cat. The cat guarantees, cat enacted into statutory law by FARA, just to be clear, right? So it's a statute. Says no removal into torture. It's an absolute mandate on the United States. And so this showing that we made in the district court demonstrates that that is very much at risk. And therefore, pause while we figure it out. And while we let the immigration court system do what the immigration court system does. Since we're focused on the cat claim, remind me what it is about going to the immigration agency first to get immediate relief that's so complicated in a cat claim. So why that's different for the district courts. We both agreed we'd have to show serious change country conditions and a real risk for this individual in that country. So why, if you had solely a cat claim, that's what we're now isolated on, what would be different about going the administrative route? And why would it be so burdensome if that was the only thing you were focused on? Just cat. Your Honor, there are all through the record and in the district court's findings, there are findings that the immigration court system was not capable of doing this fast enough. The detention, the transfers that were going on. They could do it for one individual. That just proves it's a class case. But if you don't have access to class relief. Even individuals putting together an MTR, a stay, and a cat claim in a matter of a few days. Remember, I'm taking that off the table. I'm asking about just solely cat. Why, if all you had was cat, would you? But you can't just bring the cat claim. You have to bring it with an MTR and a stay. You don't get to file your cat claim until your MTR is granted. And you don't get to have the MTR be heard until your stay is granted. You have to file all three in the administrative system. And so you have to put, that's the package. So the MTR stuff has what, all your history? Is that the compensation? So the cat claim has things about your history. And it requires a signature, just by the way. So that when you're talking about people in detention and in an emergency, it's a very tough thing. But so we have the underlying cat claim. We have the MTR, which shows that there are changed country conditions since your last hearing. And so it has to grapple with when your hearing was and what's different now. And kind of how the situation has changed. And so it's somewhat individuated. And then the stay has to show that there's an emergency situation and that the rest of it is all plausible. And so you have to have all three for the package. And people couldn't do it. They just couldn't get it together. I mean, after all, some of them tried before we went into district court. And it didn't work for them. And these are the very same people who since, some of them have had their MTRs granted. So we know that the system didn't work. It's not a hypothetical at all. And we know that if they were doing it the way the government now says, that they would have been deported. And we know on the basis of the showing that we made in district court, that many or all of them would have been killed. I mean, those are all things we know. Those aren't, at the time, Judge Goldsmith was doing something predictive, but time has passed and we've now seen that his predictive judgment was accurate. That these people, when they had time to access the immigration court system, could win. He couldn't know that for sure, because he had to do it in a matter of a couple days. But now we know that, and you can know that. And so his prediction- Oh, go ahead. Why shouldn't the system just take over now? Well, the ongoing need for the relief is a really important question, Judge White. And what I would point out is that the government has not, I mean, they have available to them to file a 60B motion and seek some scaling back of the relief. And then the fact-intensive questions that would have to be resolved about how should it be scaled back and are there reliance interests and is it available to people now? And the folks who have been waiting on their immigration files, because that's what the judge ordered. Like, how long should they get to file now? I mean, this is, but it's available to the government to say, your relief may, you know, we don't think it was necessary then, but even if it was necessary then, it's not necessary now. And that's a set of, that's a record that we could produce and there might be some scaling back that would be appropriate at that point. Let me, if I may- For me, that's just the common sense thing I'm just struggling with. And I realize there's lots of details here, but the common sense thing is in 15 years, there are lots of these cases, they're about civil wars. It's the same, the stakes are just the same. There's a civil war going on. They're on the wrong side. Their side lost the civil war. The other side's in power. They have the same information. And, you know, we get these stays quite often and we grant them sometimes. Sometimes we don't grant them, but I just, I'm struggling with why this situation is so different. Yes, Your Honor. 15 years of looking at this and suddenly I'm told all along we should have been using this other route because Iraq's different. And I really don't think Iraq is different from all these other civil wars. Right, Your Honor. Part of this is that this was done en masse, which was a real challenge to the system. Part of it is that, I mean, you know, this was hundreds of arrests at a time, which is not what you typically look at. Part of it is that they rather uniquely had this- After 9-11, there weren't a lot of arrests. I thought things really changed after 9-11. Yes, Your Honor. Although they weren't done with charter planes and mass trips, which is the way that the government was planning to do this. They were much more individually processed. But you're right. Part of the issue is that these were folks who have been out on orders of supervision because they were not repatriatable. And it's not as if the government ever said to them, hey, you know what? Things are different. They just went and arrested them. And that's very different too. One thing that I wanna get onto the detention case for a couple of minutes, but you asked about class action habeas issues. In Shaw versus Martin, the Supreme Court reserved that question in a footnote. So the Supreme Court has never ruled whether or not it's appropriate. And in Harris versus, I think it's Shaw versus- I thought it's Reno versus Arab American. This says, quote, prohibits federal courts from granting class-wide injunctive relief. Ah, I see. I'm sorry. You're talking about the statutory so-called class action bar. We do not believe that that is a class action bar. We think that that's a statute that forbids adjudication of people who are not yet in removal proceedings. It requires that people who are covered by a district court order have to be individually themselves in removal proceedings. And it's not actually a bar on class action. That's not been briefed or argued here. And the Supreme Court in Jennings just said, huh, that's kind of a complicated issue. Let's get some briefing on it. Not quite. They said you should look at this first. I read that a little differently. Well, I take that point, Your Honor. And again, if that's a claim that's gonna be made by the government, then we'd be happy to brief it, hopefully in the district court first, where we get to develop a record that's relevant, but or here. I will also say that there have been, I thought your question was not so much about immigration habeas, but about habeas in general. And there have been, in Harris versus Nelson, the Supreme Court said that habeas should borrow procedures from the civil system. And there have been habeas class actions. But I take your point about the statute cited in Reno versus ADC, and we would be happy to brief it. We do not think it applies here. Let me move on, if I may, for my remaining minute to the detention case. The issue in the detention case, we think that the court ruled correctly on the statutory issues. And shoot, 50 seconds. Jennings isn't great for that. So we actually think that Jennings strengthens our case, Your Honor. So let me explain why. If you think about 1231, for starters, right? There's two different statutes at issue here. There's 1231 and there's 1226. In 1231, Jennings specifically said, that one's different. So what the court held in Zavadas was that 1231 says a covered alien, quote, may be detained. And what the court said in Zavadas was, that means may be detained is some discretion, but it's not unlimited discretion. And it does not authorize the indefinite detention. May be detained simply does not authorize indefinite detention. Well, likewise, the district court. You're saying it's pure statutory and we shouldn't think about constitutional avoidance? No, it's a constitutional avoidance reading for sure. But likewise. That's the part that Jennings doesn't seem helpful on. Well, Your Honor, what I think is, may I answer? Please. Thank you. So two things. Jennings didn't say no more constitutional avoidance readings. Jennings said it has to be a plausible reading. There's clearly a serious constitutional question about the constitutionality of needless prolonged detention. Every court that's looked at it has said that. There's clearly a serious question. And so the question before the district court and before you is, is there a plausible reading of 1231 that allows, I'm sorry, that supports what the district court did? And the answer is yes. Just as may be detained does not authorize indefinite detention, may be detained does not authorize needless prolonged detention. It's the same argument as in Jennings with a slightly different constitutional, in service of a slightly different constitutional point. So what the district court did was said to ICE, look, you may not detain people in a prolonged situation when it's not necessary. And so you have a choice. You can release them. You can demonstrate that the detention is not needless, or you can come to me and you can say why it is that there shouldn't have to be a bond hearing. But that's your choice. The statute does not authorize needless prolonged detention. That's a completely plausible reading of the statute. Jennings specifically said, we are not disagreeing with Zavadas. And that is the Zavadas reading of the statute. In any event, it certainly raises a serious question going to the merits, which in light of the equitable factors here means that it survives as an exercise of discretion in this PI setting. I would be very happy to talk about 1226 as well as a statutory matter, but I'm over my time. So I wanna just ask the court's guidance on that. Just tell me why it doesn't apply. It doesn't apply because it says in 1226 C2, the part that says no bond basically says only for aliens covered by C1. And C1, it says all of C1. C1 applies only to aliens when released from criminal custody. And these particular petitioners were not taken into immigration custody when they were released from criminal custody. They were taken into immigration custody decades later. And so we're not saying they should get released just to be clear. We're saying they should get a chance to demonstrate that they don't pose a safety threat or a flight risk. And if they succeed in that, then they should be released. And so C2 and 1226 C, which is the exception from the general statute, which is 1226 A, doesn't apply because it's a narrow exception that only applies to people who meet the various criteria. And our clients do not meet those criteria. And so if somebody kind of just falls through the cracks, they don't pick the person up the day they're released and they're out for a week? Oh, that's a much more aggressive reading than the one we're offering, Your Honor. We're not saying that it has to be immediate.  We're talking about a matter of decades for some of these folks and years for nearly, as far as I know, for all of them, but it's a class. We don't have those facts for everybody, but it's at least years and often decades. So our claim is not that it has to be immediate. And let's just be clear. We're not saying they should be released. We're saying they should get a chance to get bombed. And again, we know you have the luxury, not the luxury, but the benefit of knowing what Judge Goldsmith only had to make a prediction on. He predicted that some of these folks were being held in needless detention and if given the opportunity, would actually be able to show that. And he was correct, half of them did. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. I'd like to hit three or four quick points. First, if I could more squarely answer your question, Judge Sutton. The government agrees that there is habeas jurisdiction in individual habeas cases that truly challenge detention, but do not challenge the underlying removal order. There can be line drawing issues in individual cases. And that's because of a statutory provision or because of a Supreme Court case? Or what's your reason for that? The Real ID Act, Your Honor, the legislative history, and I think it, borne out by just the way the statute is phrased, is 1252G bars review of the execution of a removal order or in district court anyway. And that reflects an effort to preserve kind of other challenges that are true habeas claims. So what I sort of, the bottom line answer on your jurisdictional question is individual habeas actions that truly challenge detention and not the underlying removal order, those could be available. The issue that we have here, and this dovetails somewhat with the class-wide issues you were saying, is it's hard to say on a class-wide basis whether every single person is challenging true detention, cognizable habeas things, or challenging execution of removal. If the injunction is vacated in these case, this case goes kind of the appropriate route we think of ultimately individual cases, that can be sorted out on an appropriate individual basis, but we're kind of in an odd circumstance here where it's hard to say across the board there just would never be jurisdiction. So just so I'm getting your answer is you just can't do it on a class-wide basis? And that's what we should do? There would be serious problems on a class-wide basis, but I would say that it would depend on the individual habeas petition. Some would be- What about Judge Batchelder's narrowing point? That in this case, it's very strange to exercise jurisdiction over the detention because the only reason there is detention is because of, under your view, a mis-exercise of jurisdiction under the removal provision. Right. Does that create a jurisdictional problem in this unique setting? Does, Your Honor, the reason I was a little bit, why it's a little bit hard to just sort of like kind of close the door on that question is there's sort of a ripeness question about, what would an individual challenge to detention without the obstruction of the first preliminary injunction? What would that look like? What would be the challenge to- Well, what do you want us to do in the second case? Let's say you're right. You get every single thing you asked for in the first case. What do you want to happen in the second case? Remand for further proceedings on whether this case should be, after vacating the injunction on detention, remand for further proceedings on any constitutional- Wait, wait, wait, wait. If you get what you want in the first case, there's no preliminary injunction on removal. Yes. You can't say anything about detention because that's my question. What happens in the second one as to the detention and why? You get just what you want. You get, you're the author of your own success. Sure, Your Honor. Individual petitioners could, if they wish to do so, try to bring individual habeas actions and those can be litigated. Can I, let me try to ask it in a different way. Yes, Your Honor. This is kind of the crux of what I'm struggling with here. 1252G says, except as provided in this section and notwithstanding any other provision of law, statutory or non-statutory, including section 2241 of title 28 or any other habeas corpus provision and sections 1361 and 1651 of such a title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the attorney general to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. And it seems to me you must be saying that detention matters are not any of those things. They're not claims or causes arising from the decision of the attorney general to commence proceedings, to adjudicate cases, or to execute removal orders. And if they're not, what are they? I think my answer is it's not necessarily that detention does not get swept in in many situations by that provision, Your Honor. What I'm sort of holding out the possibility of is a sort of like a Zabidas kind of claim that was a 2241 instance where somebody is subject to a removal order, they are detained, but there is no, the detention is not in aid of removal and there's no chance of removal, that sort of thing. That could be an instance where 2241, an individual habeas petition would be available. I agree in this case, it's a different circumstance. I think at least generally where the detention, the efforts in detention here have been in aid of removal. So the attack on detention. Well, if that is so, and if that is the position that you're taking, why do we have jurisdiction over these detention claims? Or why did the district court have it? I think there is a serious question on that, Your Honor. And the way the case has gone, we haven't quite ripened to that issue in light of the first injunction, but I do think there is a serious issue in that given the nature of these detention claims, I think there is a 1252G problem there. Has G been changed since Avidas? I don't, I'm not positive, Your Honor, but I don't. Avidas is 2001 and my thing says there are at least something in 05. And there's been quite a dialogue between the court and Congress on this. Court seems to keep losing. Right, Your Honor. I think all I'm saying is that 1252G does preserve habeas jurisdiction that is not an attack to the removal order. I think what we have here in a lot of these, if this sort of case proceeded by the normal channels, what you'd be seeing is these are really attacks to execution of the removal order and to the removal order, and so would be barred. I still don't know what your request is. I can't tell if the request is, well, it doesn't make sense to do this on a class-wide basis. That's why you dissolve any injunction on the detention claim. And if people wanna try to bring individualized claims and say they fit under some Zavidas exception that still exists, perhaps, is that what you're saying? Is that your point? I just don't know what the point is. Right, well, certainly the injunction needs to be vacated because there's no basis to order bond hearings here. I think that's step one. Why? Why is that so obvious if G is in a bar and you think they have these claims in habeas? I don't know why that's so obvious. I'm not saying that they do have those claims in habeas, Your Honor. I'm saying that, you know, it's, what I'm saying is that there could be instances of individual habeas petitions that are not barred by 1252-G. It would depend on that particular case and it would need to be litigated on an individual basis. Given the background here, it seems quite likely that those would not be viable habeas petitions because of sort of the relief and the attack that the petitioners here have brought. Maybe I'm just not getting all of this, but what seems to me to be the key likelihood of success thing in light of your argument is whether there's a likelihood of success of you being able to do this on a class-wide basis. And that's not something that really has been briefed yet here. Now, we could ask for the briefing, but that's what you keep coming back to because you say there might be individuals. Well, I infer from that that you're making the point that the problem here was doing this on a class-wide basis. If I'm missing something, tell me, but. Well, I mean, I think as a threshold point, Your Honor, I just don't think that there's any, I mean, what the second injunction orders here are bond hearings and presumptive release. And if nothing else, the statutes don't allow for that kind of an order. Whether or not you had a class action, you're saying. The kind of order, if I understand you correctly, you're saying the kind of order the district court put on is not an order that it could put on either in an individual or a class action case. Right, Your Honor, right. That's right. And I think on top of that, what I'm just saying is that the Zobby Dust issue has not really fully ripened in the district court. There's been continued discovery on the matter. And if there were anybody with actual Zobby Dust claims, again, they may need to bring individual cases. But again, that's sort of kind of a brewing issue. What I do know is that the 1226 and 1231 kind of bases for the detention issue are not sound. I see that my time's up. If I can be indulged one more minute, could I make a couple more points? But I understand that I've gone over, Your Honor. We've already given you an hour. That's fair, Your Honor. I understand. Thank you, Your Honor. Thank you very much. The case will be submitted. We'll just ask that the courtroom be cleared, those of you.